GREGORIO GOMEZ v. THE STATE.

No. 5030. Decided June 19, 1918.

**Theft of Cattle—Ownership—Possession—Insufficiency of the Evidence.**

Where, upon trial of theft of cattle, the proof failed to show the alleged ownership or that the alleged owner was ever in possession of the animal, the conviction could not be sustained.

Appeal from the District Court of Jim Wells. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. R. Perkins, James B. Wells,* and *C. C. Forry,* for appellant.—On question of insufficiency of the evidence: Clark v. State, 20 S. W. Rep., 555.

On question of possession and ownership: Bryan v. State, 49 Texas Crim. Rep., 196; Parks v. State, 14 Texas Crim. App., 114; Prator v. State, 15 id., 363; Morrow v. State, 2 S. W. Rep., 624; Daniel v. State, 60 Texas Crim. Rep., 515, 132 S. W. Rep., 773; Florez v. State, 9 S. W. Rep., 772.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged by indictment with the theft of one head of cattle from Henry Edds.

Several questions are presented for revision, but the controlling and central thought, both from the facts and other legal aspects, centers in the proposition that the cow was not the property or in possession of Edds at the time of the taking. In a general way the facts show that the animal carried what they called the "Madrigal brand." Madrigal was the owner of a ranch in the State of Nuevo Leon, Mexico, and sold 830 head of cattle which were brought into Texas. There were eight head lost. So that the purchaser arrived at the ranch in Texas with 822 head. Some of these were also lost or were unaccounted for when Edds became the purchaser. Edds bought 600 or about 600 head which were delivered to him and for which he paid. In the contract it seems to have been stipulated that if any of the remaining 822 head were found by Edds he was to account for them by payment, but he was not to be charged with these cattle, nor did they pass to his possession or ownership until they had been passed into Edds' actual possession, or the possession of his agents. The cattle bought by Edds were branded in what they called the flat O brand. By this means the cattle that became the property of Edds were designated. He, it seems, claimed none of the cattle as actually his until the flat O brand had been placed upon them. A party named Hinojosa brought the cattle from Mexico and sold them to Guerra, and Guerra sold about 600 head of the cattle of Edds. Madrigal had agents who were authorized to collect any of the cattle in Madrigal's brand and to account for them, and among others was a man named Garcia. Julio Madrigal, son of the owner of the Madrigal brand, testified: "I know the time that some cattle were sold to Don Hinojosa. At this time when they were selling these cattle they lost a great many of them on that side. On the other side of the river, and my father had left in charge there some one to gather those cattle and sell them, among whom were Pancho Guerra, Juan Garcia and Antonio Lopez." With reference to the employment of Juan Garcia by witness' father he testified that "Juan Garcia was instructed and employed by him, and his duties and authorities were that if any of his animals showed up around Mier or those little towns or places, to sell them and make an accounting of them to him. I know whether or not Juan Garcia sold any animals and accounted to my father for them. He sold some cattle and accounted to my father for their sale. This was about three or four years ago. I don't remember exactly the time. My father lost a great many cattle by theft and otherwise along about that time. Juan Garcia about that time lived around Mier, Guerrero and Camargo."

The bringing of the cattle by Hinojosa into Texas was during the year 1913. Appellant claims to have bought the cow in question and others from Juan Garcia. This particular cow carried the Madrigal

brand. When the cattle were taken by the sheriff this particular cow carried the Madrigal brand, and also appellant's brand, which was "18." It did not have on it the flat O brand of Edds. As we understand this record Edds was never in possession of the animal, nor was his agent. Edds himself was never at any time in possession of the animal. His only claim or title to the animal was through that of his contract with Guerra, which was to the effect as they discovered any cattle in the Madrigal brand, or around the Guerra pasture, they were to be placed in Edds flat O brand, and Edds was to account to Guerra for the cattle. The title under this contract would not pass to Mr. Edds until he had obtained possession of the animals, and the testimony fails to indicate that the flat O brand was ever placed on this animal, or that Edds was ever in possession of it. The indictment having alleged ownership in Edds, it was necessary to prove this allegation. If it had shown that the animal carried his brand and that it run in the accustomed range, this might be evidence of the fact that it was his cow, and by this means was in his possession, but the evidence fails to show this fact. It also fails to show that he was ever in possession of the animal with or without the flat O brand on it. The title would not, therefore, under the contract pass to him as owner of it until he had taken possession of it under the contract. His ownership of the cattle depended upon the fact that he first secure possession. He did not account to Guerra for this animal before possession was in appellant, if he ever did afterward. From any viewpoint of this testimony we fail to see that Edds was ever the owner or in possession of the animal. He did not have actual possession. He seems to know nothing about the cow until after it had been taken from appellant's agent. It seems it was not taken personally from appellant. Edds had not placed his brand upon it, and there was nothing to indicate, as we understand this testimony, that possession and ownership ever passed to Edds from any viewpoint of the testimony. The ownership would be in Guerra if it was one of the 822 head that he bought until it had been delivered to Edds, or at least until Edds had possession of it under his contract. If either of the three agents of Madrigal had sold any of those animals, that would pass title to the purchaser from the agent. It would not confer title or place possession of such animal in Edds. Edds, under such circumstances, would not be the owner, and would not be responsible to Guerra for the value of the animal. Edds was only to obtain possession from an account to Guerra for those cattle that were found and placed in his possession. Under these facts certainly it would not be held that Guerra could hold Edds responsible for the value of the cattle, if one of Guerra's cattle. Edds would plead, and legally correct, that he was not responsible for the cow, for he had never obtained possession. The fact that he obtained possession of it after it had gone into the possession of defendant from Juan Garcia would not authorize Edds to take possession of it after such transfer under his contract with Guerra, because in any event Edds' possession of it could only be after the taking

by appellant, if he did take it. It was not Edds' cattle until he got possession of it under his contract with Guerra. At the time he secured possession, if it be held he secured possession from appellant, the theft, if any, had been committed,—not from Edds but from the owner. Without going into a detailed review of the law and questions suggested, the above is the basis of the case, and we hold that under this testimony the ownership in Edds was not shown.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*